1  PAUL, HASTINGS, JANOFSKY & WALKER LLP
   ROBERT L. SHERMAN *PRO HAC VICE* (New York Bar No. 1189521)
2  SARA J. CRISAFULLI *PRO HAC VICE* (New York Bar No. 4343976)
   75 East 55th Street
3  New York, NY 10022
   Telephone:  (212) 318-6000
4  Facsimile:  (212) 319-4090

5  PAUL, HASTINGS, JANOFSKY & WALKER LLP
   MARK E. MCKEEN (Bar No. 130950)
6  SEAN D. UNGER (Bar No. 231694)
   T. LEE KISSMAN (Bar No. 233434)
7  55 Second Street
   Twenty-Fourth Floor
8  San Francisco, CA  94105-3441
   Telephone:  (415) 856-7000
9  Facsimile:  (415) 856-7100

10  Attorneys for Defendants

11                    UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13                     SAN FRANCISCO DIVISION

14

15

16  | BARE ESCENTUALS BEAUTY, INC. a Delaware corporation | CASE NO.  C-07-1669 MMC |
    |---|---|
17  | | **L'ORÉAL S.A.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |

    Plaintiff,

18  vs.

19  L'ORÉAL USA, INC., a Delaware
    corporation and L'ORÉAL S.A., a French
20  Société Anonyme,

    Defendants.
21

    Date:  May 2, 2008
    Time:  9:00 a.m.
    Courtroom 7, 19th Floor
    The Honorable Maxine M. Chesney

    Complaint Filed:  March 22, 2007

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ................................................................1

II. RELEVANT FACTS ........................................................................2

   A. L'Oréal Does Not Control or Direct the Activities of LUSA as Related to BARE NATURALE ..............................................................2

   B. L'Oréal is Legally Prohibited From Producing Documents .................................4

   C. Statements Regarding L'Oréal Document Collection Are Not Misleading...........5

   D. Privileged Documents Are Not Related to the "Grammy Advertisement" ...........5

III. LEGAL ANALYSIS.........................................................................5

   A. Plaintiff Has Not Made a *Prima Facie* Showing of Personal Jurisdiction...........5

   B. A Decision on Jurisdiction is Not Dependent on a Decision on the Merits ..........6

   C. L'Oréal is Not Subject to Personal Jurisdiction Based on an Alter Ego or General Agent Theory................................................................6

   D. L'Oréal Is Not Subject To General Jurisdiction in California.............................9

   E. L'Oréal Is Not Subject To Specific Jurisdiction in California ............................9

     1. L'Oréal Has Not Taken Any Actions Within the Forum to Constitute Purposeful Availment......................................................10

     2. L'Oréal Did Not "Purposefully Direct" Activities at the Forum.............10

     3. L'Oréal's Activities Do Not Give Rise To the Claims..........................11

     4. The Exercise of Jurisdiction Over L'Oréal Would Not Be Reasonable ....12

   F. L'Oréal is Not Subject to General Jurisdiction in the United States....................14

   G. Rule 37 Sanctions are Inappropriate ............................................15

IV. CONCLUSION....................................................................15

1

## TABLE OF AUTHORITIES

2

### CASES

3    *AT&T v. Compagnie Bruxelles Lambert,*
        94 F.3d 586 (9th Cir. 1996) .........................................................................5, 7, 10
4
    *Ameritec Corp. v. Ameritech Corp.,*
5        No. 86-0951, 1986 WL 10702 (C.D. Cal. Apr. 29, 1986) ........................................8

6    *Amoco Egypt Oil Co. v. Leonis Navigation Co.,*
        1 F.3d 848 (9th Cir. 1993) ....................................................................................12
7
    *Bancroft & Masters, Inc. v. Augusta National, Inc.,*
8        223 F.3d 1082 (9th Cir. 2000) ...............................................................................11

9    *Calder v. Jones,*
        465 U.S. 783 (1984).............................................................................................10
10
    *Consolidated Development Corp. v. Sherritt, Inc.,*
11       216 F.3d 1286 (11th Cir. 2000) .............................................................................14

12   *Data Discount, Inc. v. Systems Technology Associates, Inc.,*
        557 F.2d 1280 (9th Cir. 1977) .................................................................................6
13
    *Doe v. Unocal Corp.,*
14       248 F.3d 915 (9th Cir. 2001) .....................................................................2, 7, 9, 10

15   *Holland America Line Inc. v. Warstila N. America, Inc.,*
        485 F.3d 450 (9th Cir. 2007) ............................................................................ 14-15
16
    *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,*
17       456 U.S. 694 (1982).............................................................................................15

18   *Kramer Motors, Inc. v. British Leyland, Ltd.,*
        628 F.2d 1175 (9th Cir. 1980) ...........................................................................7, 10
19
    *Metropolitan Life Insurance v. Neaves,*
20       912 F.2d 1062 (9th Cir. 1990) ...............................................................................11

21   *Panavision International, L.P. v. Toeppen,*
        141 F.3d 1316 (9th Cir. 1998) .........................................................................10, 11
22
    *Pebble Beach Co. v. Caddy,*
23       453 F.3d 1151 (9th Cir. 2006) .....................................................................2, 10, 11

24   *Quick Technologies, Inc. v. The Sage Group PLC et al.,*
        313 F.3d 338 (5th Cir. 2002) .............................................................................7, 11
25
    *Robinson ex rel. Hunsinger v. Daimlerchrysler AG,*
26       No. 07-3258, 2008 WL 728877 (N.D. Cal. Mar. 17, 2008) .....................................9

27   *Schwarzenegger v. Fred Martin Motor Co.,*
        374 F.3d 797 (9th Cir. 2004) .............................................................................9, 10

28

*Submersible System, Inc. v. Perforadora Central, S.A.*,
    249 F.3d 413 (5th Cir. 2001) ...................................................................................14

*Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*,
    433 F.3d 1199 (9th Cir. 2006), *cert. denied*, 26 Sup. Ct. 2332 (2006)................................10

**RULES**

Fed. R. Civ. P. 4(k)(2) ...................................................................................14

Case No. C-07-1669 MMC

iii

L'ORÉAL S.A.'S REPLY IN SUPPORT
OF MOTION TO DISMISS

1            **MEMORANDUM OF POINTS AND AUTHORITIES**

2   **I.**     **PRELIMINARY STATEMENT**

3            Plaintiff has *failed to refute a single fact or legal precedent* contained in L'Oréal's

4   initial memorandum and declarations. Instead, it invokes buzzwords found in decisional law

5   addressing jurisdiction as its way of bridging the gap between the activities of L'Oréal S.A.

6   ("L'Oréal"), a French société anonyme that conducts no business in the United States, has no

7   physical presence in the United States and was not involved in the creation or development of the

8   trademark or TV commercial at issue, and the activities necessary to subject a party to

9   jurisdiction. Through the use of creative writing, plaintiff converts a single window shopping trip

10   into "market research," mere awareness into "targeting," viewing a video into "organizing

11   activity," receiving a copy of an e-mail into "involvement," and more. Such linguistic gymnastics

12   cannot substitute for the facts needed to satisfy the rigorous requirements before a foreign

13   company may be subjected to this Court's jurisdiction. L'Oréal is confident that this Court will

14   see through the ploy and grant L'Oréal's motion.

15            Among the most telling indicators that plaintiff itself knows that this court lacks

16   jurisdiction over L'Oréal is the blunderbuss approach it takes, arguing first general jurisdiction,

17   then specific; national, then local; alter ego, then agency; and finally for sanctions without

18   violation of an order – and all unencumbered by the facts.[1] Among the exaggerations and

19   mischaracterized "facts" that plaintiff relies on are:[2] (a) L'Oréal's mere *awareness* of plaintiff and

20   its products provides the basis for jurisdiction (4-5); (b) a L'Oréal employee's *shopping* in a mall

21   in California constitutes significant market research[3] (6); (c) *viewing* a video in New York of

22   consumers applying plaintiff's products in California is a significant contact with this forum[4] (7);

23

---

24   [1]   The Court is asked to view with great skepticism any asseveration of plaintiff that is not tied
      to a record reference and those that on their face attempt to enhance and elevate innocuous

25       facts to a status they do not deserve. Frequently, even those "facts" with record references
      are not supported by the citation on which they rely.

26   [2]   Each statement is followed by a page reference to plaintiff's brief.
  [3]   *See infra*, at 12 & n.50.

27   [4]   Declaration of Sara J. Crisafulli, dated April 18, 2008 ("Crisafulli Decl."), ¶ 5, Ex. C, at

28       110:24-112:11 (witness remembers L'Oréal employee "showing the DVD" but does not
      know whether it was "organized by L'Oréal France").

1  (d) the *subjective, uninformed opinion of* two lay employees is somehow binding as to L'Oréal's

2  legal structure[5] (10-11); (e) periodic *telephone calls* between L'Oréal and LUSA employees are

3  jurisdictionally meaningful[6] (7); (f) ordering a *trademark clearance search report* by a L'Oréal

4  attorney is doing business in the U.S. (11); (g) assigning the same lawyer to L'Oréal's and

5  LUSA's Web site somehow renders those companies a single entity (11); and (h) isolated

6  communications and testimony taken out of context.[7]

7       These inconsequential details are at the heart of plaintiff's claim of jurisdiction.

8  Under any theory, however, individually or in the aggregate, they do not satisfy the strict

9  requirement that a defendant must have "certain minimum contacts with the forum such that the

10  maintenance of the suit does not offend traditional conceptions of fair play and substantial

11  justice." *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001) (citing *Int'l Shoe Co. v. State of*

12  *Washington*, 326 U.S. 310, 316 (1945)). Similarly, any isolated or fleeting contact L'Oréal may

13  have had with the forum does not evidence "express aiming" as required to support a finding of

14  specific jurisdiction. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir. 2006).

15  **II.    RELEVANT FACTS**

16      **A.    L'Oréal Does Not Control or Direct the Activities of LUSA as Related to BARE NATURALE**

17      As plaintiff is well aware after four depositions, L'Oréal had no control or

18  oversight of the development of the BARE NATURALE franchise. L'Oréal's role was little more

19  than that of a vendor.[8] The product concept, development, package design, name selection,

20  advertising claims approval, sourcing of materials, product manufacture, and creation and

21  approval of advertising and marketing materials were all undertaken by LUSA.[9] When LUSA

---

23  [5] *See infra*, at 7-8 & n.36.
24  [6] Plaintiff alleges that Ms. Colombel visited the U.S. and participated in "twenty conference calls for every in-person trip" but ignores that she made only one trip. *See* Pl. brief at 7, 21; *but see* Crisafulli Decl. ¶ 3, Ex. A, at 32:18-33:6 (it is difficult to estimate number of calls).
25  [7] *See, e.g.*, Pl. brief at 8 (referencing one email from LUSA to L'Oréal regarding properties of BARE NATURALE formulas); *id.* (referencing one claims validation form on which L'Oréal labs responds as to claims that are supported by technical properties), *but see infra*, at 2-4.
27  [8] Crisafulli Decl., ¶ 5, Ex. C, at 42:21-43:7; 57:6-15.
28  [9] *Id.*, ¶ 5, Ex. C, at 55:13-17; 57:6-58:8; 75:3-76:13; 78:14-18; 107:12-16; 121:16-20; *Id.*, ¶ 6, Ex. D, at 23:12-24:3; 44:20-45:5; 56:21-24; 59:11-24; 60:7-11; 61:17-20; *Id.*, ¶ 4, Ex. B, at

1   developed the concept of BARE NATURALE, in accordance with standard operating procedures,

2   its New Product Development ("NPD") team drafted a brief or "marketing charter" that included

3   the specifications for the proposed product, namely, product type, launch date, country of planned

4   launch, product concept, target demographics, competitive environment, formula requirements,

5   packaging specifications and claims, *inter alia*.[10]  The marketing charter was written to assist the

6   selected laboratory, this time L'Oréal's labs in France, in developing the formula to LUSA's

7   specifications, and neither required nor allowed for changes.[11]  LUSA sent the marketing charter

8   to Ms. Delphine Viguier, the marketing director for the make-up division of the "L'Oréal Paris"

9   brand[12] in France, who is responsible for prioritizing the work of the L'Oréal labs in France with

10  respect to L'Oréal Paris-branded products.[13]  The L'Oréal labs then acted as any other vendor and

11  developed the product formula to the specifications of the marketing charter, sent the formula

12  back to LUSA's marketing team for final approval, and signed off on the technical aspects of the

13  formula, known as officialization.[14]  And just as it would with any vendor, LUSA compensated

14  L'Oréal for the use of its labs in France in the form of royalties, paid pursuant to a license

15  agreement.[15]  Thus, the involvement of L'Oréal's labs in France was that of a supplier, similar to

16  any other vendors that LUSA regularly uses.[16]

17          A similar process was followed with respect to the advertising claims that LUSA

18  considered using in connection with BARE NATURALE.  LUSA's NPD team created a

19  preliminary list of claims it would like to make with respect to the BARE NATURALE product

20  and sent it to LUSA employee Zouhair Stephan, who is responsible for claims substantiation for

21  
    85:5-12; 85:25-86:4.

22  [10]  *Id.*, ¶ 5, Ex. C, at 64:18-65:22; *Id.*, ¶ 6, Ex. D, at 66:6-17; plaintiff's Declaration of Joseph M.
         Morris, dated April 4, 2008 ("Morris Decl."), ¶ 30, Ex. BB.

23  [11]  Crisafulli Decl., ¶ 5, Ex. C, at 57:6-58:8; 70:8-71:24; *Id.*, ¶ 6, Ex. D, at 65:4-66:5; *Id.*, ¶ 4,

24       Ex. B, at 12:14-15; 21:12-22:10.
    [12]  "L'Oréal Paris" is a brand, not a legal entity. *Id.*, ¶ 5, Ex. C, at 5:21-23; 34:19-25; *Id.*, ¶ 4,

25       Ex. B, at 5:21-25; *Id.*, ¶ 3, Ex. A, at 9:2-5.
    [13]  *Id.*, ¶ 5, Ex. C, at 66:24-67:20; 67:25-68:9; 68:17-69:2; *Id.*, ¶ 6, Ex. D, at 67:2-16; *Id.*, ¶ 4,

26       Ex. B, at 67:10-22.
    [14]  *Id.*, ¶ 5, Ex. C, at 63:12-64:7; *Id.*, ¶ 6, Ex. D, at 45:12-18; *Id.*, ¶ 4, Ex. B, at 22:12-24:15;

27       60:5-8.
    [15]  *Id.*, ¶ 5, Ex. C, at 13:24-14:8; 15:4-7; 45:5-10; 69:3-6; *Id.*, ¶ 6, Ex. D, at 62:22-63:9.

28  [16]  *Id.*, ¶ 5, Ex. C, at 42:21-43:7; 44:16-45:4; 84:18-85:2; *Id.*, ¶ 6, Ex. D, at 63:15-18.

1  LUSA in Clark, New Jersey, for coordination of the testing and approval process.[17]  Mr. Stephan

2  determined which claims were purely regulatory (*e.g.*, subject to the U.S. Food & Drug

3  Administration's review), for which he is responsible, which claims could not be made based on

4  LUSA's internal policies, and which claims required technical substantiation by the labs.[18]  For

5  those claims requiring substantiation, he forwarded them to L'Oréal's labs in France – the labs

6  that developed the BARE NATURALE formula – for the appropriate testing to be carried out.[19]

7  After the claims were tested, Dolorés Colombel, the communications liaison between the L'Oréal

8  labs in France and LUSA's marketing team, sent the results of the tests to Mr. Stephan who

9  submitted his final claims evaluation to LUSA's marketing team.[20]  The ultimate decision on

10  which of the permissible claims would be used in the product's advertising was entirely in the

11  hands of LUSA.[21]  No claims were suggested by L'Oréal employees and no other approval was

12  required.[22]  *Cf.* Pl. brief, at 7-9.

13       L'Oréal does not sell or market *any* products in the United States.[23]  L'Oréal does

14  not sell or market any products bearing the BARE NATURALE name *anywhere.*[24]  All decisions

15  regarding the development, testing, market introduction, advertising and marketing of BARE

16  NATURALE were within the exclusive province of LUSA.[25]

17      **B.**    **L'Oréal is Legally Prohibited From Producing Documents**

18       As plaintiff is aware, based on a recent French Supreme Court decision (*see* Cass.

19  crim., 12 décembre 2007, N°7168), recently publicized in the French general press, L'Oréal is

20  prohibited from collecting, transferring, and producing documents in this litigation absent

21  adherence to the provisions of the Hague Convention.[26]  When L'Oréal became aware of that

22

---

23  [17]  *Id.*, ¶ 5, Ex. C, at 82:6-12; *Id.*, ¶ 4, Ex. B, at 38:25-39:11.
    [18]  *Id.*, ¶ 5, Ex. C, at 80:19-81:25; *Id.*, ¶ 3, Ex. A, at 31:4-13; 39:5-40:7.
24  [19]  *Id.*, ¶ 3, Ex. A, at 10:2-11:10; 15:4-16; 19:19-21:10; 100:9-103:2.
    [20]  *Id.*, ¶ 3, Ex. A, at 7:10-24; 113:25-114:13; *Id.*, ¶ 5, Ex. C, at 82:6-12; 82:20-83:3; *Id.*, ¶ 4, Ex.
25      B, at 38:3-9.
    [21]  *Id.*, ¶ 3, Ex. A, at 34:6-19; 37:11-23; 45:20-25; *Id.*, ¶ 5, Ex. C, at 62:22-63:7.
26  [22]  *Id.*, ¶ 5, Ex. C, at 82:20-83:3.
    [23]  *Id.*, ¶ 5, Ex. C, at 20:7-25.
27  [24]  *Id.*, ¶ 6, Ex. D, at 17:24-18:5; 34:15-23; *see infra*, at 8 & n.39.
    [25]  *See supra*, at 2-3 & n.9.
28  [26]  *Id.*, ¶¶ 7-9, Exs. E-G.

1  decision, it notified plaintiff and sought a legal opinion as to its obligations under French law.

2  Although L'Oréal and its counsel, as a professional courtesy, initially agreed to treat L'Oréal as a

3  U.S. party for purposes of the jurisdictional discovery process, it since has learned that it is

4  prohibited from doing so. If L'Oréal were to comply with the discovery requests of plaintiff or an

5  order of this Court, it could be subject to criminal sanctions[27] and potential legal action by its

6  employees, in addition to being subjected to public ridicule in France. Accordingly, plaintiff

7  must proceed under the Hague Convention in order for the French courts and legal process to

8  determine whether L'Oréal may comply with the discovery demands of this lawsuit.

9  **C.      Statements Regarding L'Oréal Document Collection Are Not Misleading**

10  The Court is respectfully referred to the declaration of Robert L. Sherman, dated

11  April 18, 2008 ("Sherman Decl."), submitted herewith.

12  **D.      Privileged Documents Are Not Related to the "Grammy Advertisement"[28]**

13  L'Oréal was not involved in the creation or approval process of the Grammy

14  Advertisement. As addressed *supra*, at 3-4, L'Oréal's involvement in the claims process was

15  limited to laboratory testing *in France* to determine whether technical claims intended to be used

16  by LUSA were supported by the formula.[29] LUSA documents withheld on the basis of privilege

17  contain communications seeking legal advice with respect to the proposed advertising claims.

18  LUSA has consented to *in camera* review of certain communications listed on its privilege log.

19  **III.    LEGAL ANALYSIS**

20  **A.      Plaintiff Has Not Made a *Prima Facie* Showing of Personal Jurisdiction**

21  Plaintiff bears the burden of proving that this Court has personal jurisdiction over

22  L'Oréal consistent with the requirements of constitutional due process. *See AT&T v. Compagnie*

23  *Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). It has not made even a *prima facie* showing

---

24  [27]    The criminal provisions of the "French Blocking Statute," which are set forth in N°80-538
25          dated July 16, 1980, provide for punishment of a maximum of 18,000 € fine and/or six
            months imprisonment.
26  [28]    As defined in the Complaint, ¶ 22.
    [29]    L'Oréal and LUSA witnesses uniformly testified that L'Oréal had no involvement in the
27          approval of the allegedly false claims used in the Grammy Advertisement. *See* Crisafulli
            Decl. ¶ 6, Ex. D, at 46:19-47:24; *Id.*, ¶ 5, Ex. C, at 92:10-93:7; 97:8-99:22; *Id.*, ¶ 3, Ex. A, at
28          12:22-13:22; 34:6-19; *see infra*, at 12 & n.49.

L'ORÉAL S.A.'S REPLY IN SUPPORT
OF MOTION TO DISMISS

1  of facts that support a finding of jurisdiction. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557

2  F.2d 1280, 1285 (9th Cir. 1977). L'Oréal's alleged contacts with the forum state, and the

3  United States, do not support a finding of jurisdiction under any of plaintiff's various theories.[30]

4  The isolated and mischaracterized contacts with the forum that plaintiff attributes to L'Oréal, even

5  if taken as true, do not satisfy the requirements of federal due process. *See infra*, at 14.

6  **B.      A Decision on Jurisdiction is Not Dependent on a Decision on the Merits**

7  As one of its many diversions, plaintiff argues that a decision on jurisdiction

8  should await the completion of merits discovery, and relies on *Data Disc*, 557 F.2d 1280. There,

9  however, the court limited such deferral to "*where plaintiff has made a prima facie showing of*

10  *jurisdictional facts . . . .*" *Id.* at 1289 n.6 (emphasis added). Here, the alleged "jurisdictional

11  facts" appear only in plaintiff's brief – not in documents, deposition testimony or the real world.

12  Plaintiff's claim that jurisdictional facts and the merits are intertwined rings hollow in view of the

13  utter void in its opposition papers and does not justify this Court's delaying the resolution of

14  L'Oréal's motion to dismiss. It would inflict enormous, unjustified and expensive punishment on

15  L'Oréal were the Court to keep L'Oréal in the case based only on plaintiff's say-so. Resolution

16  of the trademark infringement and false advertising claims is wholly independent of whether

17  L'Oréal is properly before this Court, as jurisdiction is not dependent on a finding of culpability.[31]

18  **C.      L'Oréal is Not Subject to Personal Jurisdiction Based on an Alter Ego or General Agent Theory**

19  Plaintiff's allegation that L'Oréal's subsidiary, LUSA, is the alter ego or mere

20  agent of L'Oréal is an affront – and highlights the insincerity of plaintiff's position. LUSA is one

21  of the largest, most prestigious and financially sound cosmetics companies in the U.S. and is an

22  autonomous business headquartered in New York that abides by all legal and corporate

23  formalities, runs and oversees its own daily operations with its own management, develops and

24  markets its own products and pays royalties to L'Oréal for the use of certain trademarks in the

25
26
27
28

---

[30] Plaintiff notes that for the purposes of satisfying even a *prima facie* standard, the court accepts its version of the facts "as true unless directly controverted." Nearly every alleged "fact" plaintiff relies on is directly controverted by the documentary evidence and deposition testimony adduced in this proceeding. *See infra*, at 7-9. The others are irrelevant.

[31] Plaintiff claims that L'Oréal is potentially a contributory infringer, not an infringer, but does not explain why.

1   United States.  *See* L'Oréal's initial brief at 3 and accompanying declarations.

2   In order to demonstrate that LUSA is the alter ego of L'Oréal, plaintiff must make

3   a *prima facie* case "(1) that there is such unity of interest and ownership that the separate

4   personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate

5   identities] would result in fraud or injustice." *Doe*, 248 F.3d at 926 (quoting *AT&T*, 94 F.3d at

6   591).  Similarly, to prove LUSA is the mere agent of L'Oréal, plaintiff must demonstrate that the

7   subsidiary functions as the parent's representative by performing services "sufficiently important

8   to the foreign corporation that if it did not have a representative to perform them, the

9   corporation's own officials would undertake to perform substantially similar services." *Id.* at 928

10  (quoting *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1405 (9th Cir. 1994)).  Neither is close

11  to being true, and certainly is not demonstrated by plaintiff, even *prima facie*.

12  In this circuit, the "alter ego" or "agent" theory fails even where directors of the

13  parent sit on the board of the subsidiary, the parent is responsible for sales, has "general executive

14  responsibility for the operation" of the subsidiary, "reviewed and approved major policy

15  decisions," guarantees obligations of the subsidiary and works closely with executives of the

16  subsidiary on pricing, including travel to the United States for such purposes.  *Kramer Motors,*

17  *Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1177-78 (9th Cir. 1980).

18  In awkwardly presenting its alter ego and agency arguments, even plaintiff

19  concedes that the "bits of evidence" it cites are not sufficient to support such a finding.[32]  It relies

20  on such irrelevant, and often misconstrued, "bits of evidence" as:  (1) L'Oréal conducted a

21  trademark search and filed an application for BARE NATURALE; (2) a L'Oréal employee serves

22  as the administrative contact for both LUSA's Web site and L'Oréal's Web site,[33] (3) L'Oréal

23  employees have traveled to the United States and have visited LUSA headquarters in New

24  York,[34] (4) L'Oréal and LUSA employees communicate via e-mail;[35] (5) non-lawyer L'Oréal

25  _____

    [32]  Pl. brief at 23-24.

26  [33]  Courts have held that a foreign parent's operation of a Web site containing company and
    product information and links to U.S. subsidiaries does not support a finding of personal

27  jurisdiction). *Quick Techs, Inc. v. The Sage Group PLC*, 313 F.3d 338, 345 (5th Cir. 2002).

28  [34]  Plaintiff makes the unsupported allegation that all travel to the U.S. by L'Oréal employees
    was to visit LUSA.  Deposition testimony of L'Oréal employees indicates that is inaccurate.

1  employees have referred to "L'Oréal" as one company, in their own minds;[36] (6) a L'Oréal

2  attorney was asked to search for the availability of a trademark;[37] (7) a L'Oréal employee

3  informed a LUSA employee that it could not use certain packaging that was already being used

4  for a different product in another franchise.[38] Taken together, those "bits of evidence" fall

5  woefully short of demonstrating a "unity of interest and ownership" such that the two distinct

6  entities "no longer exist." Plaintiff has offered no evidence to support its claim that L'Oréal is

7  "regularly involved" in the "internal affairs or daily operations" of LUSA. None exists.

8  Ironically, plaintiff points to nothing about *LUSA* that would render it L'Oréal's alter ego. What

9  acts of LUSA render it such a nullity?

10          Plaintiff also alleges that LUSA is the "mirror image" of L'Oréal and that LUSA

11  and L'Oréal offer "virtually identical" products, with the same packaging, same brand name and

12  same "marketing strategy."[39] Although those allegations are inaccurate and unsupported by

13  evidence, assuming, *arguendo*, that they were true, that would not be sufficient to support a

14  finding of jurisdiction where "the operations of the corporations are kept distinct and separate."

15  *Ameritec Corp. v. Ameritech Corp.*, No. 86-0951, 1986 WL 10702, at *4 (C.D. Cal. Apr. 29,

16

    *See* Crisafulli Decl. ¶ 3, Ex. A, at 25:17-26:3; *Id.*, ¶ 6, Ex. D, at 11:20-12:2; 38:22-40:5; *Id.*, ¶

17      5, Ex. C, at 113:25-114:8.

[35] Plaintiff cites to email correspondence between LUSA marketing representatives and L'Oréal

18  lab employees regarding certain technical product components. As addressed *supra*, at 3-4,
L'Oréal labs act as a vendor for LUSA at times and, thus, such communication does not have

19  any bearing on the corporate relationship between the two entities.

[36] Whether two L'Oréal employees consider the two entities to be a single "L'Oréal" in their

20  own minds cannot possibly have any bearing on the true relationship between a parent and
its foreign subsidiary. Moreover, the witnesses distinguished LUSA from L'Oréal in

21  deposition testimony. *See* Crisafulli Decl. ¶ 3, Ex. A, at 6:9-16 (When asked "*[i]n your
mind*, is L'Oréal one company or many companies," Colombel replied, "I really don't know.

22  One company? Many companies? For me it's one, L'Oréal."); *Id.*, ¶ 5, Ex. C, at 12:17-14:8;
*Id.*, ¶ 4, Ex. B, at 31:5-23; *Id.*, ¶ 6, Ex. D, at 22:11-15; 51:17-52:4; 54:7-55:11.

23  [37] Plaintiff misquotes and takes out of context deposition testimony. *See* Crisafulli Decl. ¶ 6,

24  Ex. D, at 50:9-54:3 (discussing trademark clearance process). Naturally, as L'Oréal owns the
trademarks that it licenses to LUSA, L'Oréal undertakes the trademark clearance searches.

25  [38] Ms. Viguier responded to LUSA's inquiry regarding product packaging indicating that
because the proposed packaging was already in use on an international product, True Match,

26  it would have to select new packaging for Infallible, which was also an international product.
*See* Morris Decl., ¶ 30, Ex. BB; Crisafulli Decl. ¶ 6, Ex. D, at 16:14-22.

27  [39] Crisafulli Decl. ¶ 6, Ex. D, at 17:24-19:7 (noting differences between Bare Naturale and

28  Accord Parfait Minéral); 31:23-33:9; 34:7-38:14 (same); *Id.*, ¶ 3, Ex. A, at 28:19-29:11; *Id.*,
¶ 4, Ex. B, at 78:21-79:17.

1    1986) (stating that evidence of "suggestive advertisements which could be inferred to imply that

2    the moving defendants are a unitary business" did not support general jurisdiction where the

3    corporate operations were separate and distinct).

4        Plaintiff makes the unsupported allegation that "because L'Oréal USA conducts

5    the very same kinds of operations that its parent does elsewhere," L'Oréal would perform

6    "substantially similar services" if LUSA did not perform them. Pl. brief at 21-24. This Court has

7    held that the agency test is not satisfied where, as here, plaintiff offers no evidence for its

8    assertion; the subsidiary is fully independent with respect to all aspects of development of

9    products for sale in the U.S.; the design, development, manufacture and sale of products in the

10   U.S. are not tasks fundamental to the foreign parent's business; and there is no evidence that the

11   parent would begin performing the services if the subsidiary ceased to. *Robinson ex rel.*

12   *Hunsinger v. Daimlerchrysler AG*, No. 07-3258, 2008 WL 728877 (N.D. Cal. Mar. 17, 2008).

13   Most of all, what plaintiff fails to appreciate is that L'Oréal does not sell BARE NATURALE

14   *anywhere*.[40] It has no need to replace with its own activities what LUSA does with respect to that

15   brand.

16       **D.    L'Oréal Is Not Subject To General Jurisdiction in California**

17       To establish general jurisdiction in California, plaintiff must prove that L'Oréal's

18   contacts with California are "substantial, continuous and systematic" so as to "approximate[]

19   physical presence" in California. *See Doe*, 248 F.3d at 923; *Schwarzenegger v. Fred Martin*

20   *Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).[41] Plaintiff concedes that L'Oréal is not subject to

21   general jurisdiction in California based on its own forum contacts that do not meet the "exacting

22   standards" necessary to support a finding of jurisdiction.[42] *Schwarzenegger*, 374 F.3d at 801.

23       **E.    L'Oréal Is Not Subject To Specific Jurisdiction in California**

24       Plaintiff argues that L'Oréal is subject to specific jurisdiction in California. To

25   meet its burden, plaintiff must demonstrate that L'Oréal "d[id] some act or consummate[d] some

26   [40]    *See supra*, at 4 & n.24.

27   [41]    *See* L'Oréal's initial brief at 5-6 (discussing factors used to determine whether contacts are "continuous and systematic").

28   [42]    Plaintiff argues that California has general jurisdiction over L'Oréal based on its relationship with LUSA. *See infra*, at 9-12.

Case No. C-07-1669 MMC                    9                    L'ORÉAL S.A.'S REPLY IN SUPPORT
                                                               OF MOTION TO DISMISS

1  transaction within the forum or otherwise purposefully avail[ed] itself of the privileges of

2  conducting activities in the forum" and that its claims "arise out of or result from [L'Oréal's]

3  forum-related activities." *Doe*, 248 F.3d at 923; L'Oréal's initial brief, at 6-9.

                1.      **L'Oréal Has Not Taken Any Actions Within the Forum to Constitute**

4                          **Purposeful Availment**

5          Plaintiff has failed to identify a single "deliberate action" taken by L'Oréal within

6  the forum that "invok[es] the benefits and protections of [its] laws" and would constitute

7  purposeful availment. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).

8  Its only effort to do so, that L'Oréal broadcast the Grammy Advertisement, is just plain wrong.[43]

9  With respect to the license agreement between L'Oréal and LUSA, it was not negotiated or

10  entered into in California and is not governed by California law.  There is no example of

11  L'Oréal's having "purposefully availed" itself of the benefits and protections of California law or

12  the privilege of conducting activities in the forum.[44]  Its contacts with California are, being

13  charitable, "random, fortuitous or attenuated." *AT&T*, 94 F.3d at 590.

                2.      **L'Oréal Did Not "Purposefully Direct" Activities at the Forum**

14

15          In assessing whether a defendant's outside activities were "purposefully directed"

16  at the forum, the Ninth Circuit applies a modified version of the Supreme Court's *Calder v.*

17  *Jones*, 465 U.S. 783 (1984) "effects" test, which requires that the defendant (1) committed an

18  intentional act; (2) expressly aimed at the forum state; (3) causing harm that the defendant knows

19  is likely to be suffered in the forum state. *Pebble Beach*, 453 F.3d at 1155-56; *Yahoo! Inc. v. La*

20  *Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206-07 (9th Cir. 2006), *cert.*

21  *denied*, 26 Sup. Ct. 2332 (2006); *Schwarzenegger*, 374 F.3d at 803.  The *Pebble Beach* court

22  made clear that the third prong requires "something more" than merely a foreseeable effect in the

23  forum state – and that "something more" requires "express aiming" of the defendant's activities at

24  the forum state.  453 F.3d at 1156 (citation omitted).

25

26  [43]   *See infra*, at 11-12 & n.49.

27  [44]   Assuming, *arguendo*, L'Oréal approved the Grammy Advertisement, this Circuit has found
        such contact to be insufficient to support jurisdiction. The *Kramer Motors* court found that a
        foreign parent's "mere approval" of its U.S. subsidiary's marketing scheme is not "the kind

28          of deliberate forum protection-invoking act which the law requires." 628 F.2d at 1178.

1    Those cases in which the courts of this circuit have found a defendant's activities

2  to constitute "express aiming" or "individualized targeting" are different in kind from the alleged

3  activities of L'Oréal. In *Panavision*, the defendant registered plaintiff's trademark as a domain

4  name in order to extort payment from the plaintiff.  141 F.3d at 1327.  The Ninth Circuit found

5  that the "something more" aspect of the "effects" test was satisfied because registration of the

6  domain name was part of an extortion scheme aimed at a California corporation.[45]  *Id.*  The court

7  required more than mere forseeability or knowledge that actions would cause harm in the forum.[46]

8    In a case that involved contacts with the forum substantially similar to those of

9  L'Oréal here, the Fifth Circuit affirmed a district court's finding that such contacts were

10  insufficient to justify the exercise of specific jurisdiction under Rule 4(k)(2) of the Federal Rules

11  of Civil Procedure.[47]  The foreign defendant's contacts with the United States included: filing an

12  opposition to plaintiff's federal trademark application; asserting defendant's use of its mark in

13  commerce in the U.S.; retaining a U.S. lawyer to file an opposition proceeding and to negotiate

14  with plaintiff; filing a federal intent-to-use trademark application ; contacting U.S. companies

15  regarding its re-branding efforts; travel to the U.S. by its director of business development;

16  operating a Web site that provided links to its U.S. subsidiaries; and using the trademark in

17  question on product advertising and brochures of its U.S. subsidiaries.  *Quick Techs.*, 313 F.3d

18  338.  L'Oréal has done far less.

19        3.    **L'Oréal's Activities Do Not Give Rise To the Claims**

20    The contacts with the forum that give rise to plaintiff's claims are attributable

21  solely to LUSA.  For example, the Grammy Advertisement, which forms the basis of plaintiff's

22

---

23  [45]  Contrary to plaintiff's argument, the court did not find that merely knowing the harm would
       be felt in California was sufficient as "something more."  Pl. brief at 15.

24  [46]  The Ninth Circuit also has found the third prong satisfied by "individualized targeting."  *See*

25  *Pebble Beach*, 453 F.3d at 1157 (citing & distinguishing *Metro. Life Ins. v. Neaves*, 912 F.2d
       1062 (9th Cir. 1990) (defendant sent letter to defraud insurance company located in forum

26  state as part of insurance fraud scheme); *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223
       F.3d 1082 (9th Cir. 2000) (defendant sent letter to California corporation requiring it to sue

27  in order to secure the domain name at issue)).

28  [47]  The Ninth Circuit applies the "purposeful direction" analysis of the "effects test" to the Due
       Process analysis under Rule 4(k)(2).  *Pebble Beach*, 453 F.3d at 1159-60.

L'ORÉAL S.A.'S REPLY IN SUPPORT
OF MOTION TO DISMISS

1    false advertising claim, aired only once and was developed, approved and broadcast at the sole

2    discretion of LUSA.[48]   When plaintiff's counsel asked the L'Oréal and LUSA deponents whether

3    L'Oréal had any involvement in the approval of the allegedly false claims used in the Grammy

4    Advertisement, he was informed that L'Oréal had no involvement, inasmuch as such claims were

5    not technical and did not require substantiation by the labs.[49]   Any remote involvement was in the

6    form of technical testing *in France* of the proposed claims generated by LUSA.  Final say on all

7    advertising claims is the exclusive province of LUSA.  Plaintiff is well aware that it was LUSA

8    alone that conceived BARE NATURALE and sought to enter the mineral-based cosmetics

9    market.  L'Oréal did not "specifically target" anything, any place or anyone.  Its ultimately

10   becoming aware of plaintiff is irrelevant to the jurisdictional inquiry.  Finally, plaintiff

11   misconstrues the testimony of Ms. Viguier, who stated that she saw mineral-based cosmetics

12   while shopping in California, and attempts to categorize that as "market research."[50]   Ms. Viguier

13   did not conduct "market research," but even if she had, one trip to California for that form of

14   "research" would not support a finding of specific jurisdiction.

15              4.        **The Exercise of Jurisdiction Over L'Oréal Would Not Be Reasonable**

16              Although plaintiff has not met its burden of proof on the first two prongs of the

17   jurisdictional inquiry, in all events, the assertion of jurisdiction over L'Oréal, a foreign

18   corporation,[51] by this Court is not reasonable and defies traditional notions of "fair play and

19   substantial justice."  *Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 852 (9th Cir.

20   1993).  Exposing L'Oréal to potential litigation and criminal sanctions for the violation of French

21   employee privacy laws is but one example.  *See supra*, at 4-5 & nn.26-27.

22              **Burden On Defendant.**  Plaintiff argues that L'Oréal has an agent and a lawyer in the

23   U.S.; thus, there is no burden to litigating here.  L'Oréal does not have an agent in the U.S.[52]

24   Hiring a lawyer in the U.S. does not alter the fact that all of L'Oréal's employees, files, offices

---

25   [48]   Crisafulli Decl. ¶ 6, Ex. D, at 46:19-47:24.
     [49]   *Id.*, ¶ 5, Ex. C, at 92:10-93:7; 97:8-99:22; *Id.*, ¶ 3, Ex. A, at 12:22-13:22; 34:6-19.  Compare
26          those unequivocal statements with plaintiff's self-serving version, *supra*, at 5 & n.29; Pl.
            brief, at 7-9
27   [50]   *Id.*, ¶ 6, Ex. D, at 41:7-43:4.
     [51]   *See* L'Oréal's initial brief, at 10 & n.4 (higher jurisdictional barrier for a foreign defendant).
28   [52]   *See supra*, at 7-9.

L'ORÉAL S.A.'S REPLY IN SUPPORT
                                                                          OF MOTION TO DISMISS

1  and documents are in France.  *See* L'Oréal's initial brief at 10.  Whether LUSA asked questions

2  of French trademark counsel is irrelevant to the burden of L'Oréal's litigating in the U.S.[53]

3  **Conflict With Sovereignty Of France.**  Plaintiff's argument that that the exercise of

4  jurisdiction would "not offend French sovereignty" is illogical.  In the context of this litigation,

5  there already has been a substantial conflict between French law and U.S. discovery obligations

6  that could expose L'Oréal to criminal liability and fines.  *See supra*, at 4-5.  Moreover, L'Oréal's

7  only connection to this lawsuit is through the actions of its U.S. subsidiary, and that does not

8  outweigh the interest of a sovereign nation in the control and protection of its own citizens.

9  **The Existence Of An Alternative Forum.**  Plaintiff inaccurately states that L'Oréal has

10  proposed the Trademark Office as an alternate forum.  *See* L'Oréal's initial brief at 10.

11  Additionally, plaintiff cites no support for its proclamation that a judgment from a French court

12  "would be difficult to enforce in the United States."  Pl. brief at 20.  In all events, plaintiff has

13  offered no plausible reason why the courts of France are not an adequate alternative forum to

14  litigate a dispute based on the alleged tortious conduct of a French corporation.

15  **Extent of Purposeful Interjection.**  Because this factor is parallel to the minimum

16  contacts analysis for jurisdictional purposes, if L'Oréal's contacts with the forum are not

17  sufficient to support jurisdiction, those same contacts are not sufficient to demonstrate purposeful

18  interjection.  *See supra*, at 9-12; L'Oréal's initial brief, at 10-11.

19  **Forum State's Interest.**  Because any conduct alleged to have occurred and caused injury

20  in California is attributable to LUSA, California's interest in "providing an effective means of

21  redress for its residents" can be accomplished regardless of whether L'Oréal is a party.

22  **Most Efficient Forum For Judicial Resolution.**  Merely because plaintiff believes that

23  litigating in California would allow it to resolve any issues with L'Oréal does not make California

24  the "most efficient" forum.  It is not the most efficient forum where, as here, the defendant is a

25  foreign corporation with no contacts with the forum and no presence in the forum or in the U.S.

26  **Convenient and Effective Relief for Plaintiff.**  L'Oréal is not a necessary party to this

27  lawsuit.  L'Oréal employees do not have any information regarding the trademark at issue other

28  [53]  *See supra*, at 8 & n.37.

1 than lab results already provided to LUSA and what was provided to them by LUSA. Thus,

2 discovery responses from LUSA will provide plaintiff with all the evidence relating to its claim.

3 Moreover, if LUSA is found to infringe plaintiff's marks, the court could preclude it from using

4 the BARE NATURALE mark in the United States independent of the license agreement with

5 L'Oréal. L'Oreal had nothing to do with the claimed false advertising. *See supra*, at 5 & n.29.

6       **F.     L'Oréal is Not Subject to General Jurisdiction in the United States**

7            Plaintiff asserts that L'Oréal is subject to general jurisdiction in the United States

8 pursuant to Fed. R. Civ. Pro. 4(k)(2). Although plaintiff attempts to conflate the requirements for

9 general and specific jurisdiction under Rule 4(k)(2), "[t]he due process requirements for general

10 personal jurisdiction are more stringent than for specific personal jurisdiction, and require a

11 showing of continuous and systematic general business contacts between the defendant and the

12 forum state." *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000).

13 Additionally, a nonresident's contacts with the forum that "are unrelated to the litigation must be

14 substantial in order to warrant the exercise of personal jurisdiction under Rule 4(k)(2)." *Id.*

15            Plaintiff relies solely on United States travel by L'Oréal employees; however, such

16 travel is unrelated to the allegations of this lawsuit[54] and does not satisfy the "stringent" standard

17 of "continuous and systematic general business contacts" with the United States that would make

18 the exercise of jurisdiction appropriate. That standard has been articulated as requiring "*extensive*

19 *contacts* between a defendant and a forum." *Submersible Sys., Inc. v. Perforadora Cent., S.A.*,

20 249 F.3d 413, 419 (5th Cir. 2001) (emphasis added). In *Submersible*, the court held that

21 "[p]urchasing equipment in a forum and traveling to that forum on related business are, without

22 more, insufficient to confer personal jurisdiction when the plaintiff's cause of action does not

23 arise out of those purchasing activities." Additionally, the court noted that the Supreme Court has

24 "upheld an exercise of personal jurisdiction when the suit was unrelated to the defendant's

25 contacts with a forum *only once*." *Id.* at 419 (emphasis added).

26            Notably, the Ninth Circuit recently expressed disdain for jurisdiction under

27 4(k)(2): "[I]n the fourteen years since Rule 4(k)(2) was enacted, none of our cases has

28 —————————————————

[54]   Sherman Decl., ¶ 6.

L'ORÉAL S.A.'S REPLY IN SUPPORT
OF MOTION TO DISMISS

1    countenanced jurisdiction under the rule." *Holland Am. Line Inc. v. Warstila N. Am., Inc.*, 485

2    F.3d 450, 462 (9th Cir. 2007). This case is no exception.

3           **G.**      **Rule 37 Sanctions are Inappropriate**

4            The Supreme Court has stated that a court's discretion to impose sanctions under

5    Rule 37(b)(2) is limited by due process requirements and sanctions must be "just." *Ins. Corp. of*

6    *Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982). It found extraordinary

7    circumstances making sanctions just where the responding party had not made a conscientious

8    effort to respond to discovery, *the district court issued multiple orders* and *issued warnings* that

9    failure to comply would result in the specific sanction imposed. *Id.* at 707-08 (emphasis added).

10            L'Oréal has made good faith efforts to fully comply with discovery in this case,

11    including, responding to and supplementing responses to interrogatories, producing witnesses for

12    depositions in the U.S., and sending two associates to Paris to gather responsive information.

13    L'Oréal initially cooperated without requiring plaintiff to follow Hague Convention formalities;

14    however, based on recent developments in French law, L'Oréal cannot waive those requirements.

15    *See supra*, at 5. L'Oréal has not attempted to obfuscate or delay; rather, it has sought to cooperate

16    and comply with its discovery obligations and continues to do so. Accordingly, it would be

17    unjust and violate due process for this Court to find personal jurisdiction as a sanction against

18    conduct that has been neither egregious nor the subject of a willful violation of a court order.

19   **IV.**     **CONCLUSION**

20            As set forth above, L'Oréal is not subject to general or specific jurisdiction in

21    California and does not have the requisite "substantial, continuous and systematic contacts" to be

22    subject to general jurisdiction. Additionally, L'Oréal has not violated any discovery order and

23    should not be made the subject of personal jurisdiction as a sanction.

24    DATED: April 18, 2008         PAUL, HASTINGS, JANOFSKY & WALKER LLP

25

26                       By  _____ /s/ Robert L. Sherman_____
27                               ROBERT L. SHERMAN

28                  Attorneys for Defendants L'ORÉAL USA, INC. and
L'ORÉAL S.A.